The next case today is United States v. Scott Estes, Appeal No. 19-2111. Attorney Andrews proceeds. May it please the Court, Judge Lynch, Judge Barron, Judge Burroughs, I'm requesting two minutes for rebuttal. Certainly. Okay. Your Honors, may it please the Court, this case involves the Sixth Amendment right to confrontation, and specifically the primary purpose test and the literal right to confrontation. Mr. Estes asserts that the District Court misapplied the objective part of the analysis from Ryan. In particular, the focus should have been not just on the emergency, but also on the investigation that was done by the caller. I lost everybody and I'm frozen. I'm going to call on the phone. You've come back. No, that does help. Okay, I am back. I thought I heard someone beginning to ask me a question. No, proceed with your argument. Certainly. We're saying the focus should have been on the investigation done by the caller and not on the emergency itself. The investigation on the caller is an objective circumstance, a fact that was proven, and evidence was submitted with respect to the investigation that was done by the caller to the 911 emergency line. That investigation involved contacting not one but two other people and inquiring about various circumstances that may have made Mr. Estes' conduct more or less illegal. Because the District Court judge did not address this sufficiently and focused more on the subjective motivations of the police and the subjective fear of the caller that an opposite outcome should have occurred in this case. While we understand why- Mr. Andrews, I want to be clear. A redacted version of the call was put in such that, as I understood it, by agreement, some of the information about the investigation was redacted. Okay, so given that background, is your argument that this wasn't really an emergency because before she got on the 911 call, she contacted friends, and in the course of contacting those friends, she urged both of them to notify the police of the situation she was in? It is a part of my argument that there was not a true emergency here because of those contacts. She didn't call the police, I need help, there's a man that I'm with who has a gun and he's using that gun recklessly in a way that puts me in fear. Okay, but the government argues she was not free to make a voice 911 call until they came upon a road emergency, roadblock or something, and he got out of the car. And as soon as he got out of the car, she then placed the 911 call. I understand that the circumstances are such that it would be reasonable, right, as an explanation that Mr. Estes had gotten out of the car and she was finally free to make the call. She was texting and driving. It wasn't like her actions were unnoticed by Mr. Estes. I'm sorry, are you saying if it were a real emergency, she should have texted the police rather than waiting to make a 911 call? Either the police or even just texting her friends. I need help because of this problem. That's not what she did. What she did was say to her employer, do you have a gun and are you missing a gun? And does it look like this? And when the answer was in the affirmative, that's when she said, oh, I'm in trouble. And I would like you to call the police. And, of course, that person did call the police. And then 10 minutes later, there was another call from the woman who was in the car with Mr. Estes. By your account, Mr. Andrews, the questions that you just said that she asked are questions that are designed to figure out her degree of danger. So how does that help you? Well, I don't think that those are questions to figure out her degree of danger. I mean, there's a gun. You're ending it by saying after she asked those, then she realized, now I'm in trouble. Well, no. That's how you put it, which I think would be a fair construction of it. And that's a little different than an investigation. That would seem to be sussing out one circumstance of threat. And, well, that is another objective criteria with respect to whether there's an emergency or not. I guess my point is, Judge Barron, is that the interpretation of the emergency is just a single factor with respect to whether or not these statements are testimonial. I think that there's a more significant factor involved here. And I want to move on to the idea that this is the literal right to confrontation that is involved here. It is both the investigation and the lack of emergency and the fact that that somehow, because if we look at Ohio versus Clark, which I didn't cite in my brief, but if I were to look at it, we would see that one of the major concerns in whether or not the primary purpose test is made is whether or not the person is capable of fabricating the emergency. And that is what we argued below, was that this was a fabrication of an emergency. But in more than that, the government sought to admit this testimony even though the declarant was available. And we think that that is a violation of the literal right. That is what Justice Thomas talks about in Davis, that the main focus of the Sixth Amendment right to confrontation is to avoid the prosecutorial... Mr. Andrews, the way you structured your brief, you first said there was a violation of the Sixth Amendment right. And then you make an argument that independent of the Sixth Amendment, there is a right to confrontation. The government says there is no such right as to your second argument. Would you like to address the government's assertion? Certainly, Your Honor. I think that Justice Thomas describes that right quite clearly in his, I want to say, concurrence with Davis. He characterizes that there is, in fact, a literal right to confrontation and that the informal nature of the 911 call can assume the basis of formality based on the idea that if someone is trying to evade, right, the formality of the process, that that itself is a consideration in whether or not the statement should be admitted as testimonial or non-testimonial. And that, to me, is the crux of the literal right to confrontation. I think that's how Justice Thomas characterizes it. I think that's how Justice Scalia had characterized it in his concurrence in Ohio v. Clark. The other point that I would like to make, Your Honor, is that I think that, and I apologize if I mispronounce this, I think it's Cato, the case that we all cite about the First Circuit's decision about what factors should be used in determining whether this is testimonial under Davis. Go ahead, finish the sentence. Sure. I think that those factors are unnecessarily restrictive and that the factors are actually more inclusive than are identified in Cato. Thank you. Thank you. Mr. Andrews, if you could mute your device at this time. And, Attorney Lopez, if you could unmute your device and proceed. Mr. Andrews, you're still on the screen. There you go. Proceed, Ms. Lopez. Thank you, Judge Lynch. Good morning. May it please the Court. Julia Lopez on behalf of the United States. It's our view that the 911 call here is a quintessential example of a call made to seek assistance for an ongoing emergency. And I'd like to pick up on my colleague's argument that this wasn't really an emergency because the caller had done what he calls investigation before she called 911. We've made two primary points in our brief as to why that doesn't change the fact that this was an emergency. The first being that the record shows that she was unable to make a voice call to 911 when this interaction with the defendant and the gun began. She was right next to him in a vehicle. He was brandishing a loaded weapon at her. And so she reasonably made the decision, I would argue, that it wasn't safe to call 911 and report him while he had a loaded gun in her presence. In addition, the text messages, and Judge Barron, you asked a question that touched on this. The text messages, I would argue, did two things. She did ask both people she texted to contact the police. She told one of them, I'm scared. I'm going to be hurt. Please contact the police. So they certainly don't suggest there wasn't an emergency, but rather the opposite, that she's already quite fearful and reasonably so. But also, she's trying to assess just how much danger she's in. And as we argued in our brief, there's, I think, a difference between someone who's possessing a gun that they were given with permission by a friend or something like that, which is what the defendant told his girlfriend, and someone who's actually taking the step of stealing a firearm that very morning. Already, we can tell from the record that he's acting erratic. And so I would suggest that she's just trying to figure out exactly how much danger am I in through these text messages. And so it's our view that the district court was absolutely correct that there's nothing about this approximately 20-minute period before she called 911 that diminishes the urgent and emergent nature of this call. And then my colleague has just suggested that the kaju factors are too restrictive. Those factors are drawn directly from the Supreme Court's decision in Davis. They've been the law on the circuit for a long time. And as we've argued in our brief, this 911 call met each of those four factors, namely that the declarant was speaking about events in real time as they're actually happening. She's describing to the police exactly what's happening. And the risk that she's in. A reasonable listener would conclude that this was an emergency. You have a felon with a loaded weapon who's brandished it at his girlfriend and who's stolen it that very morning. Third, that the dispatcher's questions were tailored to resolve that emergency. The dispatcher is focused on, who are you with? Where are you? There's a lot of discussion about the location and how can the police find this woman as quickly as possible. And most of the declarant's answers were geared towards helping to assist in the emergency. As Judge Lynch pointed out, to the extent any additional information was volunteered, that was ordered redacted from the phone call. And so anything that's arguably testimonial was removed from the from the audio and the transcript. And finally, this was far from a formal police interview. This is a woman who's in an informal environment in a car with someone who's, again, brandishing a loaded weapon at her and is clearly not safe. So we would argue that each of the Kaju factors is met, that the district court properly determined that this was non-testimonial. And in that case, the law is also quite clear that the confrontation clause simply does not apply. My colleague has suggested that there's some additional confrontation right beyond the Sixth Amendment. But that's just not what the Supreme Court or this court's law shows. I think there's been a bit of progression from Crawford. Ms. Lopez, could you explain how did the redaction part come about? Because the argument you're making about the emergency nature of it, I'm just a little puzzled why parts of that call then would be redacted. I know, Your Honor, that Judge Hornby, I believe, at a pre-hearing conference had raised concerns about some aspects of the call that he said were hearsay within hearsay. When the declarant was reporting what she had learned about the gun being stolen. So I don't even know that it necessarily was a concern that that was testimonial, but there was separate evidentiary concerns. And so what the government did prior to the hearing is provided a redacted version to the court and said, we will agree to remove anything that's hearsay within hearsay. And we will call the person whose gun was stolen to testify about the theft. Five minutes remaining. Through the 911 call. So I don't mean to concede that that was testimonial, but simply that to the extent there's any concern that she volunteered more than was necessary to resolve the emergency. That's been eliminated because anything about the theft of the gun was redacted from the call. And then again, just to return briefly to this idea that even though it's non-testimonial, the government still has to produce her as a witness. I think it was, you know, after Crawford, the Supreme Court sort of further defined the confrontation right in Davis and then in Bryant and made very clear that when you're evaluating a claim like this, the confrontation right only applies if the statement is testimonial. Once it's non-testimonial, the question at that point is only whether there's a rule of evidence that would allow the admission of the statement. So we would argue that that is the position that we are in here, that this was a non-testimonial statement. And then the district court set forth several valid bases under the hearsay rule for the admission of this 911 call. Unless there are additional questions from the court, we would rest in our brief and urge the court to affirm. Thank you. Thank you. Attorney Lopez, you can mute your device. And Attorney Andrews, if you could please present your model. I would like to address the assertion that nothing diminished the urgency of that emergency. When she told, when he brandished the weapon, she said that she asked him to put it away, which he did. And if she's assessing his, the level of danger that she's in, I think that that's a significant factor, that he seemed to be paying attention to her and while he showed her the weapon, he also followed her instructions with respect to putting it away. The other issue that I would like to address on rebuttal is the more than necessary part. The call is replete with assertions like that he was a felon, that he possessed the firearm, all of which are necessary to prove the elements of the charges that he was facing, particularly that he was a prohibited person and that he had possession. Those are quintessentially testimonial in nature, right? In fact, that's why the government was asserting that he didn't need, or they didn't need to put on the collar because the call itself established the evidence that they would have otherwise used to prove Mr. Estes guilty. And that is significant. That is significant both under Clark and if we look at the concurrences and dissents in Davis and Bryant, we can see why. We can see why because the major concern of the Sixth Amendment right to confrontation is to make sure that we aren't using statements as a basis for evidence. This isn't a situation like Davis or Bryant. Let's not forget in Bryant, the gentleman who was making the statements passed away and in Davis, the problem was that she didn't want… One concern with your argument is how could you give detail in a 911 call and not have it be testimonial? Is there some way? Well, I think that if you called and said, I have an emergency… But you couldn't say what it was? You couldn't describe it? Like the emergency consists of a man with a gun who's threatening to kill me? That would be testimonial on your account, right? Well, I think it would be testimonial particularly if you weren't using the declarant to come in and say that. There's a difference between having someone subject to cross-examination and someone who just comes and says these things or is unavailable. Thank you. Further questions from the panel? No. Thank you, Mr. Andrews. That concludes argument in this case. Attorney Andrews and Attorney Lopez, you should disconnect from the hearing at this time.